IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In re: Application of Randall Wagner and John Jarboe | : |
| | : |
| | : |
| In re: Appeal of Schuylkill Township | : |
| | : |
| From the Decision of the Schuylkill Township Zoning Hearing Board | : |
| | : |
| | : |
| Appeal of: Board of Supervisors of Schuylkill Township | : No. 1382 C.D. 2023 |
| | : Submitted: May 6, 2025 |

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE LORI A. DUMAS, Judge
                  HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON                  FILED: June 12, 2025

Schuylkill Township (Township) appeals from an October 13, 2023 order of the Court of Common Pleas of Chester County (Common Pleas) affirming the Decision (Decision) of the Schuylkill Township Zoning Hearing Board (ZHB). The ZHB granted a dimensional variance of a setback requirement for the placement of a retaining wall at the rear of property (Property) owned by Randall Wagner and John Jarboe (Applicants). Upon review, we reverse Common Pleas' order.

## I. Background

Applicants purchased the Property in 2018 and thereafter undertook various landscaping and grading projects. Reproduced Record (RR) at 24a-25a, 31a-32a & 199a. In the course of their projects, Applicants applied for a grading permit in 2020 related to retaining walls in the front area of the Property. *Id.* at 46a-48a &

70a. At the time Applicants submitted grading and wall plans to the Township for review, they had no intention of building a retaining wall in the rear of the Property. *Id.* at 45a & 82a.

The Township subsequently informed Applicants that they would need a building permit for construction of the retaining walls at the front of the Property. RR at 52a & 71a. There was communication between Applicants and the Township concerning the need for detailed information from Applicants and an indemnification agreement to protect the Township in order for the permit to be issued and to avoid requiring Applicants to remove the upper walls, which they had already installed; however, the Township never issued a permit for construction of the upper retaining walls. *Id.* at 53a-54a, 74a, 142a & 252a.

Applicants subsequently decided to regrade and build a retaining wall along the rear of the Property to stem runoff of stormwater onto neighboring properties due to the slope in the rear of the Property. RR at 55a-57a. The Township's zoning officer informed them that they would need a permit for any retaining wall over three feet in height.[1] *Id.* at 41a. Applicants claimed that their original permit application was for unspecified "retaining walls," and they imply that it would have supported placement of a retaining wall in the rear of the Property as well as in the front. *Id.* at 59a-60a & 82a. However, as stated above, the Township never issued the requested permit for *any* retaining wall. *See id.* at 53a-54a, 57a-58a & 72a. Further, Applicants never applied for a permit to build a retaining wall after deciding to construct one in the rear of the Property. *Id.* at 59a & 348a; *see also id.*

---

[1] Applicants were also told by a Township inspector that they would need a grading permit and possibly a building permit for any retention wall. RR at 41a. Moreover, communications from the Township concerning Applicants' grading plans, along with any related assurances that a permit was not required, related to the upper walls, not the rear retaining wall at issue here. *Id.* at 45a.

at 82a. They simply proceeded to have the wall constructed without a permit. *See id.* at 83a-84a. Moreover, notwithstanding that the Township's zoning ordinance required a five-foot setback from the rear property line for placement of a retaining wall, Applicants built the retaining wall without any setback. *See id.* at 111a (testimony by contractor that he built the wall on the property line) & 346a.

Notably, a survey to delineate the rear property line revealed an irregular border with one of the adjacent properties of which both Applicants and the owner of the adjacent property had previously been unaware. RR at 48a-49a & 133a. Applicants reached an agreement for a property swap to straighten the property line before constructing the retaining wall. *Id.* at 49a, 112a & 265a. The Township informed them, however, that to accomplish the proposed swap, they would have to go through the full subdivision process, combining the two properties and then redividing them. *Id.* at 55a, 72a, 256a & 260a. That was never accomplished, and the land swap was never formally completed. *Id.* at 76a-77a, 286a-88a, 293a & 297a. As a result, the rear retaining wall apparently crosses land still belonging to that adjacent neighbor.[2] *See id.* at 145a-46a (testimony by the Township's engineer that the land swap and related subdivision plan were required because Applicants' rear retaining wall was "impacting property that was not theirs. And that is why the lot lines had to be changed") & 207a (diagram of wall and proposed property line change).

The rear retaining wall was constructed during July and August in the summer of 2021, within about a month after Applicants first decided to build it. RR

---

[2] The Township's brief asserts that after-discovered information indicates that parts of the retaining wall actually encroach over the property lines onto other neighboring properties. That purported information is not part of the record before this Court on appeal and has not been considered in this decision.

3

at 62a-63a, 80a-81a, 93a, 346a & 348a. No Township inspections were performed during the wall's construction. *Id.* at 82a. The finished wall is of poured and reinforced concrete about one foot thick, extending about three feet below ground and from about two feet to just under five feet above ground. *Id.* at 29a-31a & 85a. After viewing the wall, the Township informed Applicants that for such a massive wall, they needed to obtain 15-foot-wide maintenance easements from their adjoining neighbors in order to provide for future access by workers and equipment for repairs and maintenance of the wall. *Id.* at 64a. None of the neighbors would agree to an easement. *Id.* at 64a-66a, 138a, 144a, 300a-01a & 350a. Although there was discussion with the Township's Solicitor about an indemnification agreement between Applicants and the Township instead of the easements,[3] no such agreement was ever executed. *See id.* at 301a.

In discussing the denial of easements with Applicants, the Township told them they would need to seek a variance for the rear retaining wall. RR at 66a & 301a. Applicants then submitted to the ZHB the setback variance request at issue here. *Id.* at 67a, 87a & 199a. The ZHB held a hearing, after which it granted the variance. *Id.* at 358a.

In addition to asserting that they met the applicable variance criteria under the zoning ordinance and Section 910.2(a) of the Pennsylvania Municipalities Planning Code (MPC),[4] Applicants alternatively posited at the hearing that they should be granted a variance by estoppel on the bases that (1) the Township knew the wall was being constructed and did not issue a stop work order or otherwise protest its installation or location, and (2) the Township's direction that a variance

---

[3] The record is not clear as to whether the indemnification related to the rear retaining wall.

[4] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

4

would be required constituted a tacit representation that the Township would not oppose that variance. RR at 17a & 355a; *see also id.* at 67a-69a (stating that Applicants were "blindsided" by the Township's opposition to the variance because they had been "working towards a resolution" of the zoning and permit issues). Because the ZHB concluded that Applicants had met the applicable variance criteria, its Decision did not address Applicants' alternative request for a variance by estoppel. *Id.* at 356a-58a (ZHB decision, denying Applicants' request for a variance by estoppel as moot).

The Township appealed to Common Pleas from the ZHB's Decision. RR at 359a-67a. Applicants intervened. *Id.* at 393a-96a Common Pleas affirmed the ZHB's Decision without taking additional evidence. *See* Twp. Br., App. A. This appeal by the Township followed.[5]

## II. Issues

The Township raises five issues for review by this Court.[6] First, the Township asserts that Applicants presented no evidence of a hardship that would justify granting a variance of the setback requirement. Second, in a related argument, the Township maintains that Applicants' purported hardship, their sloping rear yard, does not relate to, support, or justify a variance from the five-foot setback

---

[5] As Common Pleas did not take additional evidence, our review is limited to determining whether the ZHB's findings are supported by substantial evidence and whether its decision is free from legal error. *Kneebone v. Zoning Hearing Bd. of the Twp. of Plainfield*, 273 A.3d 553, 567 (Pa. 2022). However, this Court's determination may properly disagree with the decision of Common Pleas, where the disagreement pertains to whether substantial evidence supported the ZHB's findings, determination of which is "well within [our] appellate standard." *Id.*

[6] In their initial variance application, Applicants suggested there was some ambiguity in the zoning ordinance concerning the need for a setback for a wall. *See* RR at 203a. However, they have not asserted or developed any argument concerning ambiguity in this appeal.

5

requirement for a retaining wall. Third, and also related to its first two arguments, the Township contends that the relaxed hardship standard for dimensional variances articulated by the Pennsylvania Supreme Court in *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 721 A.2d 43 (Pa. 1998), does not support a variance in this case. Fourth, the Township argues that any hardship Applicants have articulated was self-created when they chose to install the retaining wall without a permit from the Township or the approval of its zoning officer and that the intentional nature of that act disqualifies Applicants from obtaining a variance. Because these first four arguments are interrelated, we discuss them together below.

Fifth, and finally, the Township suggests that because the ZHB imposed conditions on the variance that Applicants cannot possibly meet, the variance should not have been granted.

Applicants, in addition to opposing the Township's arguments, suggest that in the event this Court determines they have not met the applicable criteria for a variance, the Court should remand for a determination by the ZHB on the issue of a variance by estoppel.

### III. Discussion

### A. Purported Hardship from the Sloping Rear Yard

Section 910.2(a) of the MPC provides:

(a) The [zoning hearing] board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. The board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The board may grant a variance, provided that all of the following findings are made where relevant in a given case:

6

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the [applicant].

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2(a). The Township's zoning ordinance mirrors this provision. *See* Twp. of Schuylkill, Pa. Code, § 370-209 (1997).

Regarding the element of unnecessary hardship, our Supreme Court has held that a more relaxed analysis applies where a dimensional variance, rather than a use variance, is sought, stating:

When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment

7

of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance. . . .

*Hertzberg*, 721 A.2d at 47. Accordingly, in determining whether there is an unnecessary hardship justifying a dimensional variance, "courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Id.* at 50.

Nonetheless, the hardship requirement must still be met. Our Supreme Court has clarified that "post-*Hertzberg*, a relaxed standard of proof is applied in assessing whether an unnecessary hardship exists. With that said, there must still be *some* evidence of hardship, and we believe it would stretch the concept of relaxation beyond the breaking point to affirm . . . a finding" of unnecessary hardship in the absence of substantial supporting evidence. *Kneebone v. Zoning Hearing Bd. of the Twp. of Plainfield*, 273 A.3d 553, 571 (Pa. 2022); *see also Doris Terry Revocable Living Tr. v. Zoning Bd. of Adjustment of City of Pittsburgh*, 873 A.2d 57, 62 (Pa. Cmwlth. 2005) (observing that "[e]ven if we accept [the] premise that a lesser quantum of evidence is required under *Hertzberg*, there must be some evidence presented" on each of the required conditions before a variance can be granted).

Further, our Supreme Court has explained:

We have little doubt that municipal zoning boards are better positioned than reviewing courts to assess local conditions and make reasoned judgments about when circumstances prevailing in their area, combined with strict adherence to local zoning regulations, may give rise to an unnecessary hardship. That is one of the main reasons judicial review of such judgments is deferential. At the same time, a variance by nature authorizes actions

8

> inconsistent with legislative restrictions on land use. As a consequence, any such authorization, while allowed by law, must be accomplished in compliance with standards set forth by law. It is at least one function of judicial review to ensure that the local agency's decisional process comports with those standards.

*Kneebone*, 273 A.3d at 572 (footnote omitted).

Here, the ZHB concluded there was an unnecessary hardship arising from the sloping conditions in Applicants' backyard. However, although the record contains evidence that a slope exists, *there is no evidence that Applicants' purported hardship relates to that slope*.[7] Specifically, the variance Applicants are seeking is not for the installation of the wall as such but, rather, for the elimination of the five-foot setback applicable to walls in the Township's zoning ordinance. Therefore, Applicants must demonstrate hardship, not in the need for a wall, but in the need to comply with the setback. This they have not done. There is *no evidence whatsoever* in the record that suggests the slope prevented Applicants from complying with the five-foot setback applicable to walls. Rather, the evidence indicates that Applicants merely preferred to put the wall on the property line so that neighbors would landscape and maintain the area along the wall on their own properties. *See* RR at 202a-03a.

Accordingly, Applicants have not met the first criterion for obtaining a variance, as they have failed to present *any* evidence, much less substantial evidence, "[t]hat there are unique physical circumstances or conditions, including . . . exceptional topographical or other physical conditions peculiar to the particular property *and that the unnecessary hardship is due to such conditions . . . .*" 53 P.S.

---

[7] In fact, the record does not establish the degree of the slope. The record indicates that there is a 22-foot drop in elevation from the front of the property to the back, but as there is no indication of the distance over which the drop occurs, there is no way to determine the steepness of the slope. *See* RR at 27a-28a, 346a & 354a.

9

§ 10910.2(a)(1) (emphasis added). There is simply *no evidence* that the *setback requirement* caused any hardship.

Likewise, Applicants have not met the second criterion for a variance, as they have failed to present *any* evidence, much less substantial evidence, "[t]hat because of [unique] physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property." 53 P.S. § 10910.2(a)(2). Once again, there is simply *no evidence* that the wall could not be built in compliance with the setback requirement such that a variance is necessary to allow the reasonable use of Applicants' Property.

Despite the relaxed hardship standard for dimensional variances articulated by our Supreme Court in *Hertzberg*, subsequent decisions such as *Kneebone* have clarified that all of the factors for a variance, including the hardship element, must still be met, and more specifically, "there must still be *some* evidence of hardship." 273 A.3d at 571 & 572. Applicants offered *no* such evidence here.

In addition, Applicants have failed to satisfy the third criterion for a variance, which required them to establish that any unnecessary hardship they have purportedly incurred was not caused by them. *See* 53 P.S. § 10910.2(a)(3). As discussed above, Applicants have not offered any evidence to establish a hardship arising from the setback requirement. Thus, the only potential "hardship" they could assert would be the expense of removing and relocating the wall to comply with the setback. Although *Hertzberg* allows courts to consider "the economic detriment to the applicant" in determining *whether there is a hardship*, it does not offer similar leniency in determining whether a hardship is self-created. *See* 721 A.2d at 50.

10

Here, as stated above, Applicants chose to have the rear retaining wall constructed without obtaining any permit from the Township, although their prior application for a permit for walls at the front of the Property, which was never granted, demonstrates their awareness that such a permit was required. *See* RR at 46a-48a, 52a-54a, 57a-58a &70a-72a.

In addition, Applicants "had an affirmative obligation to check" the zoning ordinance's requirements before constructing the wall within the setback and "cannot claim an unnecessary hardship because of [their] ignorance of the zoning restrictions." *Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 894 A.2d 845, 852-53 (Pa. Cmwlth. 2006), *aff'd*, 936 A.2d 1061 (Pa. 2007) (citing *Appletree Land Dev. v. Zoning Hearing Bd. of York Twp.*, 834 A.2d 1214, 1218 (Pa. Cmwlth. 2003)). Having failed to seek and obtain permission to place the wall within the setback, Applicants chose that location for the wall at their peril. Therefore, Applicants themselves created any financial hardship they may incur as a result of having to remove or move the wall. In consequence, they cannot obtain variance relief. *See, e.g.*, *Goldstein v. Zoning Hearing Bd. of Twp. of Lower Merion*, 19 A.3d 565, 569 (Pa. Cmwlth. 2011) (holding that a landowner's hardship was self-created where he constructed a pool house in violation of setback requirements and that he was not entitled to a dimensional variance even though he would be required to dismantle the pool house at great expense, as "whether a self-created hardship is substantial or minor is of no moment"); *Wilson*, 894 A.2d at 853 (observing that "a refusal to grant a variance for self-inflicted hardships is in accord with this Court's 'strong policy against assisting landowners who violate a zoning ordinance, whether negligently or intentionally . . .'" (quoting *Appletree*, 834 A.2d at 1218)); *Doris Terry Trust*, 873 A.2d at 64 (holding that applicants were not entitled to a variance for their

11

construction of a garage that violated setback requirements, and "the fact that [they] [would] be required to dismantle or reconstruct their existing garage [was] not a hardship because this [was] a situation of their own making").

In short, Applicants have failed to establish at least three of the five criteria for a dimensional variance.[8] Accordingly, the ZHB erred by granting the requested variance.

---

[8] We note that there was evidence that the rear retention wall was aesthetically pleasing to the adjoining neighbors and had reduced storm runoff from the Property. However, as this Court explained in *Goldstein v. Zoning Hearing Board of Lower Merion*, 19 A.3d 565 (Pa. Cmwlth. 2011), "the beneficial impact on neighboring properties if the variance is granted demonstrates only that the variance would not adversely impact the public interest. A property owner seeking a variance must demonstrate *both* unnecessary hardship if the variance is denied *and* that the proposed variance is not contrary to the public interest." *Id.* at 569 (emphasis added). Where an applicant does not meet the burden to demonstrate unnecessary hardship, no variance can be granted, despite any favorable testimony from neighboring property owners. *Id.*

Moreover, with regard to whether the variance, if granted, would substantially impair the appropriate use or development of adjacent property, we note that at least one of Applicants' adjacent neighbors objected to a setback variance based on concerns about future restriction of his use of his property in the setback area along the retaining wall that might occur due to the need for access by Applicants to conduct future maintenance or repairs to the wall. He testified as follows:

> Q.   I guess do you have any concern if the wall would have to be removed?  Do you have any concerns if the wall would have to be removed?
>
> A.   I do not.  I mean, I would love a resolution.  I mean, like I said, it went from an eight-foot fence [(Applicants' initial plan for the rear edge of the Property)] to a concrete wall to a concrete wall on the property line when it should have been set back.
>
> If you're looking at the concrete wall on my property, if it's three to four feet, if it was done properly and fell, it would still be on their property.  Being that it was placed on my property line, if it falls, it falls directly on my property.  And there is not going to be somebody that can come down by foot, pick up that type of concrete

## B. Impossibility of Meeting the Variance Conditions

Section 910.2(b) of the MPC provides: "In granting any variance, the board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of this act and the zoning ordinance." 53 P.S. § 10910.2(b). Here, the ZHB attached the following conditions to the setback variance it granted to Applicants:

> 1. All representations made by []Applicants on the record at the hearing with respect to the Property and this application shall be binding as conditions to this approval.
>
> 2. []Applicants shall submit core compression tests of the 320-foot retaining wall to the Township to confirm the stability of the 320-foot retaining wall.
>
> 3. []Applicants shall obtain all necessary approvals and permits, including but not limited to those related to stormwater management and tree replacement, as required by all applicable local, state, and federal regulations, ordinances, statutes, and laws.

---

> and fix it. It's going to be machinery. They're going to require space.
>
> And I don't accept that I can't do something in my backyard because somebody that went out, put a concrete wall on, basically what could be both of our properties, it can basically strap me down where I can't put a pool in my backyard if I want, because you never know what kind of machinery will have to come in to fix it. I don't want that type of restriction on my property when it's not a wall I decided to put down.

RR at 131a; *see also id.* at 20a-21a (explanation by the Township's counsel that the five-foot setback for walls was necessary to allow space between the wall and the property line for repair access) & 138a (objecting neighbor's further testimony that "I didn't put that wall there. I don't want that. I don't want backhoes on my lawn. I don't want, you know, my yard dug up for something that I didn't ask for.").

13

4. []Applicants shall comply with the terms of any other approval, permit, or review letter granted by [the] Township.

RR at 358a.

The Township argues that these conditions will be impossible for Applicants to meet. Therefore, the Township reasons that the ZHB should not have granted the variance. The ZHB asserts that in the event Applicants are unable to comply with the conditions, the variance will be ineffective rather than having been granted in error, an argument that has some facial appeal. However, because we have already determined that Applicants are not entitled to a variance, we need not reach this alternative argument by the Township.

## C. Variance by Estoppel

Applicants argue that even if this Court determines that they are not otherwise entitled to variance relief, we should remand to Common Pleas for a further remand to allow the ZHB to consider whether they are entitled to a variance by estoppel. We disagree. The record clearly shows that Applicants have not demonstrated entitlement to a variance by estoppel.

The requirements for a variance by estoppel are well established, and this Court has explained that a

> variance by estoppel is an unusual remedy under the law and is granted only in the most extraordinary of circumstances. *See Moses v. Zoning Hearing B*[*d.*] *of . . . Dormont*, . . . 487 A.2d 481 (Pa. Cmwlth. 1985); *Camaron Apts., Inc. v. Zoning* [*Bd.*] *of Adjustment of . . . Phila*[.], . . . 324 A.2d 805 (Pa. Cmwlth. 1974). In *Mucy v. Fallowfield Township Zoning Hearing Board of Washington County*, . . . 609 A.2d 591, 592 (Pa. Cmwlth. 1992) (citing *Appeal of Crawford*, . . . 531 A.2d 865 ([Pa. Cmwlth.] 1987), . . . , we summarized the factors to be

14

considered when determining whether to grant a variance by estoppel as follows:

1. A long period of municipal failure to enforce the law, when the municipality knew or should have known of the violation, in conjunction with some form of active acquiescence in the illegal use. However, a mere showing that a municipality has failed to enforce the law for a long period of time is insufficient in itself to support the grant of a variance. . . .

2. Whether the landowner acted in good faith and relied innocently upon the validity of the use throughout the proceedings. But in assessing whether a landowner's reliance upon municipal inaction is reasonable, a landowner is duty bound to check the property's zoning status . . . .

3. Whether the landowner has made substantial expenditures in reliance upon his belief that his use was permitted.

4. Whether the denial of the variance would impose an unnecessary hardship on the applicant, such as the cost to demolish an existing building.

Although the [b]orough in this case failed to pursue an enforcement action against [the applicant] until more than seven years had elapsed since it first notified him of the zoning violation, the mere passage of time does not, in itself, entitle a property owner to a variance by estoppel. *See Mucy*; *Crawford*. In those cases where we have granted a variance by estoppel, the municipalities have done more than passively stand by; they have committed some affirmative act, such as granting a building permit, which would reasonably lead a property owner to conclude that the proposed use was sanctioned under the law. *See, e.g.*, *Knake v. Zoning Hearing B[d.] of Dormont*, . . . 459 A.2d 1331 (Pa. Cmwlth. 1983) (variance by estoppel granted where a borough failed to act for forty-four years, knew the use was impermissible for twenty-seven years, and issued a building permit for the

impermissible use); *Three Rivers Youth v. Zoning B*[*d.*] *of Adjustment for . . . Pittsburgh*, . . . 437 A.2d 1064 (Pa. Cmwlth. 1981) (inaction by municipality for seven years plus issuance of building permit by municipality and reliance by landowner on zoning officer's interpretation of zoning regulation); *T*[*wp.*] *of Haverford v. Spica*, . . . 328 A.2d 878 (Pa. Cmwlth. 1974) (inaction by municipality for thirty-six years and issuance of building permit with knowledge of municipality of intended construction).

*Skarvelis v. Zoning Hearing Bd. of Borough of Dormont*, 679 A.2d 278, 281-82 (Pa. Cmwlth. 1996) (declining to find a variance by estoppel where the municipality had notice of a zoning violation for at least seven years but did not take any action which would constitute "active acquiescence" in the violation, such as issuing a building permit or engaging in "other conduct which would have placed its imprimatur on the use of the property").

Moreover, for Applicants to prevail under the theory of variance by estoppel, they must establish all of the essential factors "*by clear, precise and unequivocal evidence.*" *Springfield Twp. v. Kim*, 792 A.2d 717, 721 (Pa. Cmwlth. 2002) (emphasis added). Here, however, Applicants did not establish *any* of the factors necessary to support a variance by estoppel.

Regarding the first factor, the Township did not fail to enforce the zoning ordinance's setback requirement for a long period of time. The record demonstrates that Applicants had the rear retaining wall constructed over a period of about a month in the summer of 2021. RR at 62a-63a, 80a-81a, 93a, 346a & 348a. The Township informed them in September 2022 that they needed a variance. *See id.* at 66a & 301a. They then applied for a setback variation in November 2022. *Id.* at 5a-9a, 67a, 87a & 199a. Thus, the record demonstrates that the Township did not unduly delay in notifying Applicants that a variance was required. *Accord Skarvelis*, 679 A.2d 278 (denying a variance by estoppel and finding no improper delay where

16

the municipality inspected construction and discovered a zoning violation months after construction, sent an enforcement notice several months later, and the owner then applied for variances, which were denied).

The record also fails to establish that the Township knew or should have known of the setback violation during the time between the construction of the retaining wall and the notice to Applicants that a variance from the setback would be needed. Nothing in the record indicates that the Township knew where the rear property lines between Applicants and their various adjacent neighbors were located. Indeed, the record shows that Applicants themselves, along with at least one of their neighbors, were unaware of the exact locations of the property lines until a survey revealed them. RR at 48a-49a & 133a. *Accord Lockwood v. Zoning Hearing Bd. of Millcreek Twp.*, 540 A.2d 336, 339 (Pa. Cmwlth. 1988) (explaining that the first criterion for a variance by estoppel from a setback requirement was not met where, for the township to have knowledge of the setback violation, it would have had to know the locations of the property lines, "because only after the property lines are located can a violation of the [setback requirement] be detected . . . , [and] the record is devoid of evidence that the [t]ownship had knowledge of the boundary lines of [applicant's] property").

Moreover, delay in enforcement alone will not satisfy the first factor. *Lockwood*, 540 A.2d at 338-39. Rather, the delay must occur "in conjunction with some form of active acquiescence" in the violation, such as issuing a building permit or engaging in "other conduct which would have placed [the municipality's] imprimatur" on the violation. *Skarvelis*, 679 A.2d at 282. Here, the evidence indicated that Applicants never applied for a building permit for the rear retaining wall, and although they suggested that the permit they sought for walls in the front

17

of the Property was general enough to cover the rear retaining wall as well, the Township never issued that permit. RR at 53a-54a, 57a-58a & 72a. Further, although there was evidence that the Township had expressed some willingness to excuse Applicants from obtaining 15-foot easements from all of their adjoining neighbors for repair and maintenance of the rear retaining wall if Applicants executed an indemnity agreement in favor of the Township, no such agreement was ever executed. Moreover, nothing in the record indicates that the Township ever suggested that it would overlook the five-foot rear setback, a completely different requirement. Thus, there was no evidence whatsoever of any active acquiescence by the Township that could be construed as placing the Township's imprimatur on Applicants' violation of the setback requirement.

Regarding the second factor for a variance by estoppel, Applicants have not established that they acted in good faith and relied innocently upon the validity of their placement of the rear retaining wall. Applicants had a duty to determine both the location of the property line and any applicable provisions of the zoning ordinance, as well as to obtain any necessary permit before commencing construction of the rear retaining wall. *See Skarvelis*, 679 A.2d at 281 (stating that "in assessing whether a landowner's reliance upon municipal inaction is reasonable, a landowner is duty bound to check the property's zoning status"); *Appletree*, 834 A.2d at 1218 (citing *Mucy*, 609 A.2d at 594) (explaining that an owner is "duty[ ]bound to check the zoning status of real estate, and the failure to do so, which results in lack of knowledge, cannot support the issuance of a variance on an estoppel theory"). Applicants did *none* of those things. Notably, they *were* aware *before beginning construction* that the wall would encroach on the land of at least one neighbor and that a subdivision plan would have to be submitted and approved in

18

order to straighten the property line for the planned location of the rear retaining wall. RR at 55a, 72a, 256a & 260a. That subdivision plan was never approved, and the related land swap with Applicants' neighbor was never accomplished. *Id.* at 76a-77a, 286a-88a, 293a & 297a. Additionally, Applicants never applied for a permit for the rear retaining wall, although their previous submission of an application for a permit for other walls demonstrated their awareness that a permit was required. *See id.* at 59a, 82a-84a & 348a. Thus, Applicants cannot be deemed to have acted either in good faith or innocently in proceeding with the unpermitted construction of a wall that violated the setback requirement.

Regarding the third factor, whether Applicants made substantial expenditures in reliance upon a belief that the location of the wall was permitted, the record contained a statement that the rear retaining wall cost more than $5,000 to construct. RR at 106a & 347a. However, as explained previously, Applicants cannot reasonably have believed that they were allowed to construct the wall at all, much less in the chosen location, where they had no permit, had not verified the location of the property line, had not obtained subdivision approval for a necessary land swap, and had not checked the setback requirements in the zoning ordinance. Accordingly, assuming, without deciding, that Applicants' expenditure may be considered substantial, they made that expenditure at their peril.

Finally, regarding the fourth factor for a variance by estoppel, the cost of removing and relocating the wall as a result of the denial of a variance by estoppel cannot be deemed to impose an unnecessary hardship on Applicants in the circumstances presented here. A variance by estoppel is equitable relief; as such, it requires "clean hands" on the part of Applicants. *Brown v. Tioga Twp. Zoning Hearing Bd.* (Pa. Cmwlth., No. 1260 C.D. 2017, filed Nov. 14, 2018), slip op. at 5;

19

*In re Land Use Appeal of Cooke* (Pa. Cmwlth., No. 1300 C.D. 2008, filed Mar. 31, 2009), slip op. at 11 n.9.[9]  As discussed above, Applicants did not exhibit good faith or innocent reliance in incurring their purported hardship here.  Accordingly, they have not come to a court seeking equity with clean hands and are not entitled to the equitable relief of a variance by estoppel.

*Vaughn v. Zoning Hearing Board of Township of Shaler*, 947 A.2d 218 (Pa. Cmwlth. 2008), similar to the instant case, involved a request for a variance by estoppel to allow property owners to avoid incurring the expense of removing a retaining wall they had constructed in violation of the applicable setback requirement along their property line in order to avoid runoff onto an adjacent property.  Although this Court concluded in *Vaughn* that a variance by estoppel was appropriate, the circumstances of *Vaughn* are strongly distinguishable and, as such, actually further illustrate why Applicants here have failed to meet the requirements for a variance by estoppel.

In *Vaughn*, the township's zoning officer, who was also its building inspector, expressly testified that the property owners had consulted him multiple times before constructing the retaining wall, had shown him on the property exactly what they wanted to do in terms of a retaining wall, and had been repeatedly assured by him that no permit was required.  *Id.* at 220 & n.1.  He also repeatedly advised the property owners that they could place the retaining wall right up to the property line without a permit.  *Id.* at 220.  Both opinions were memorialized in an email and a letter.  *Id.*  Moreover, when neighbors complained about the wall during its construction, the zoning officer also told them that the wall was allowed and no permit was needed.  *Id.*  The neighbors appealed to the zoning hearing board.  *Id.* at

---

[9] These unreported decisions are cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

220-21. The zoning hearing board found the property owners were entitled to a variance by estoppel because prior to construction of the wall,

> [they] diligently inquired of the appropriate [t]ownship officials as to whether or not they were required to obtain a permit for the construction of the wall; [they] acted in good faith and with clean hands throughout the process; and [they] complied with the requirements related to the construction of the wall that were indicated to them. . . [; and] [b]ecause [they] had expended a substantial amount of money in reliance on the affirmative representations of [the zoning officer], . . . unless [they] were granted a variance by estoppel, they would experience unnecessary hardship and would incur a substantial monetary expenditure to remove the wall.

*Id.* at 222-23. This Court agreed with the zoning hearing board. *Id.* at 225.

Here, the facts contrast starkly with those in *Vaughn*. As explained above, Applicants knew they needed a permit for the rear retaining wall but chose to proceed without one. They knew they needed a subdivision approval to change the rear property line but did not obtain that approval and record deeds of correction before proceeding with construction of the wall. They did not check the zoning ordinance to determine whether a setback applied. Moreover, they did not check the precise location of their rear property line to assure either that the wall was not encroaching on any neighboring properties or that the wall was being constructed in compliance with any applicable setback. Instead, they simply chose to forge ahead with construction of the wall and incur the associated expense in willful defiance of the permit requirement,[10] in willful ignorance of applicable zoning requirements, and

---

[10] Notably, when asked at the ZHB hearing whether Applicants had applied for a permit for the rear retaining wall, Randall Wagner responded, "No. I never got the original permit that I had applied for. I can't imagine why [the Township engineer] would think that I would apply for a second permit." RR at 59a.

21

without the necessary subdivision approval. Therefore, Applicants lack the clean hands required to obtain equitable relief.

For these reasons, we conclude that Applicants have not established entitlement to a variance by estoppel. In considering whether to remand this matter, we recognize that "[w]hen the evidence is capable of supporting either of two results, this Court may not usurp the [ZHB's] or [Common Pleas'] unfulfilled duty to pass upon the factual validity of the evidence presented." *Soble Constr. Co. v. Zoning Hearing Bd. of E. Stroudsburg*, 329 A.2d 912, 916 (Pa. Cmwlth. 1974) (citing *Zoning Hearing Bd. of Upper Darby Twp. v. Konyk*, 290 A.2d 715 (Pa. Cmwlth. 1972)). Here, however, Applicants have not supported their request for a variance by estoppel with *any* evidence, much less the *clear, precise, and unequivocal evidence* required by *Skarvelis* and similar decisions of this Court. Accordingly, we decline to remand this matter for a determination on that issue by the ZHB, as such a remand would be futile. *Accord Lindquist Appeal*, 73 A.2d 378, 380-81 (Pa. 1950) (holding that where a zoning hearing board incorrectly declined to decide a variance request, a reviewing court "properly considered the matter on its merits"); *Lindenwood Corp. v. Twp. of Upper Darby*, 297 A.2d 547, 550 (Pa. Cmwlth. 1972) (making an independent determination of the merits and reversing a zoning hearing board's denial of a special exception (rather than remanding), where the zoning hearing board applied the incorrect burden of proof and there was "no competent testimony on the record" to sustain the objectors' actual burden of proof in opposing the special exception).

## IV. Conclusion

Based on the foregoing discussion, we reverse Common Pleas' October 13, 2023 order that affirmed the ZHB's decision and order granting Applicants' variance requests.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Application of Randall Wagner and John Jarboe | : | |
| | : | |
| In re: Appeal of Schuylkill Township | : | |
| | : | |
| From the Decision of the Schuylkill Township Zoning Hearing Board | : | |
| | : | |
| Appeal of: Board of Supervisors of Schuylkill Township | : | No. 1382 C.D. 2023 |

## **O R D E R**

AND NOW, this 12th day of June, 2025, the October 13, 2023 order of the Court of Common Pleas of Chester County is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge